1  Edward T. Weber, Esq., #194963
   Kristi M. Wells, Esq. #276865
2  **LAW OFFICES OF EDWARD T. WEBER**
   17151 Newhope Street, Suite 203
3  Fountain Valley, California 92708
   Telephone: 657-235-8359
4  Facsimile: 714-459-7853
   Email: ed@eweberlegal.com
5
   Attorney for Objecting Secured Creditors
6  SASSAN RAISSI, A SOLE INDIVIDUAL, AS TO AN UNDIVIDED 600,000/1,429,000 INTEREST;
   JERRY KIACHIAN, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY, AS TO AN
7  UNDIVIDED 629,500/1,429,000 INTEREST; MOHSEN KEYASHIAN, A MARRIED MAN AS HIS
   SOLE AND SEPARATE PROPERTY, AS TO AN UNDIVIDED 200,000/1,429,000 INTEREST
8

9                    **UNITED STATES BANKRUPTCY COURT**

10                   **NORTHERN DISTRICT OF CALIFORNIA**

11                          **SAN JOSE DIVISION**

12
   | | |
   |---|---|
   | In Re | ) Case No.: 20-50182 |
13 | | ) |
   | Pierce Contractors, Inc., | ) *Chapter 11* |
14 | | ) |
   | Debtor. | ) |
15 | | ) **OBJECTIONS TO APPROVAL OF** |
   | | ) **DISCLOSURE STATEMENT AND** |
   | | ) **CONFIRMATION OF CHAPTER 11** |
16 | | ) **PLAN** |
   | | ) |
17 | | ) Date: May 11, 2021 |
   | | ) Time: 10:00 am. |
18 | | ) Place: 280 South First Street, |
   | | ) Courtroom 11 |
19 | _____ | ) San Jose, CA |

20  TO THE COURT, THE U.S. TRUSTEE, THE DEBTOR, AND DEBTOR'S COUNSEL:

21      SASSAN RAISSI, A SOLE INDIVIDUAL, AS TO AN UNDIVIDED

22  600,000/1,429,000 INTEREST; JERRY KIACHIAN, A MARRIED MAN AS HIS SOLE AND

23  SEPARATE PROPERTY, AS TO AN UNDIVIDED 629,500/1,429,000 INTEREST;

24  MOHSEN KEYASHIAN, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY,

                                      1

AS TO AN UNDIVIDED 200,000/1,429,000 INTEREST, Secured Creditors in this matter

object to the Disclosure Statement and Plan as follows:

**INTRODUCTION**

1. This case was filed January 31, 2020. <u>This case is now 458 days old (1 year and 93 days)</u>.

2. Objecting Secured Creditors hold a <u>First Trust Deed</u> on the real property known as <u>194 Lantz Drive, Morgan Hill, California 95037</u>. This property is the primary asset of the Debtor. Objecting Secured Creditors are the largest of the creditors in this case.

3. Debtor claims to be a "holding company" for real property and vehicles used in the business of its principal, Richard Pierce. Richard Pierce allegedly is in the plumbing business but has not done business for pretty much all of the time this case has been pending allegedly due to COVID-19. Debtor has no income. Debtor depends on funds and capital contributions from Richard Pierce. Debtor has not filed most of its Operating Reports in this case and is not in compliance according to the Objections filed by the U.S. Trustee. Debtor has not collected or received any money since this case began. Debtor appears to have no purpose other than to hold, shield, hide, or otherwise protect, the assets of its principal, Richard Pierce. While it is plausible that some vehicles may be used in the plumbing business, it is highly unlikely that real property, such as the one in this case, which property is a luxury residence, is used by the business. It is more the lavish residence of the principal, Richard Pierce. Debtor does not appear to have any ability (or intent) to reorganize, and has been interested mostly in delay of its creditors, which has been accomplished thus far since this case began. In the year and three months since case has been pending, little to no creditors have been paid. It was not until January of this year, that Debtor was forced to pay money to Objecting Secured Creditors through a temporary adequate protection order herein in order to buy more time to get a Plan

2

filed, confirmed and pay creditors, including and especially Objecting Unsecured Creditors. But now, 4 months later, this case is no closer to having an approved Disclosure Statement, or a confirmed Plan and it appears likely there will never be a confirmed Plan. Further, Objecting Secured Creditors are at grave risk as there is no equity in the real property at all, and there is no sufficient equity cushion as to these Objecting Secured Creditors, even though they are in First position on the real property. The First Amended Disclosure Statement and Plan presented herein are insufficient, they do not adequately or properly pay creditors, including and especially these Objecting Secured Creditors, and is presented in bad faith. Objecting Secured Creditors seek denial of any approval of any Disclosure Statement, confirmation of any Plan, and seek to terminate the Automatic Stay for lack of equity and good cause.

## **TIMELINE OF RELEVANT EVENTS**

4. On March 25, 2020, Objecting Unsecured Creditors filed its first Relief From Stay motion in this case and a hearing was initially set for May 1, 2020. It was continued to May 22, 2020 and ultimately denied by the Court on the basis that there was some equity, it was still early on in the case and a Plan was supposedly going to be filed shortly thereafter. Following the denial of the motion, counsel for Secured Creditors reached out several times to Debtor's counsel (Mr. Winters) and requested the parties enter into some kind of adequate protection arrangement prior to and pending confirmation. Calls and emails were not returned.

5. On May 21, 2020, the Court Ordered the Debtor to file a Plan and Disclosure Statement by August 12, 2020. Debtor failed to do so. Debtor failed to request any extension of time prior to the deadline. Instead, Debtor filed a Status Conference Statement on August 21, 2020 which included a statement that a request for extension would be filed the following Monday, August 24, nearly two weeks past the deadline.

3

6. On August 27, 2020, the Court again Ordered Debtor file a Plan and Disclosure Statement no later than October 29, 2020. Once again, the Debtor failed to abide by the Court's Order and did not file a Plan and Disclosure Statement by the deadline. No extension of time was requested prior to the expiration of the deadline, again. Instead, the Debtor filed a Status Conference Statement on November 5, 2020, nearly a week after expiration of the deadline, again stating a further extension of time will be requested, and also at that time reveals that the Plan will be funded with Richard Pierce's personal injury funds from the death of a family member. The Debtor states that Pierce will be able to disclose the terms and the funding, and that it will be done in just 6 more weeks.

7. On November 9, 2020, once again, without consequence, sanction or any adverse action taken against the Debtor, who had twice not complied with the Court's orders and let deadlines expire without asking for extensions, the Court issued yet another Order for the Debtor to file a Plan and Disclosure Statement, this time to January 8, 2021.

8. On November 9, 2020, Objecting Secured Creditors filed their second Relief From Stay motion in this case. By that date, no payments having been made on the loan since the filing of the Petition, and the addition of interest, late charges and other fees and costs, the equity which had existed 6 months earlier when the first motion was denied, had all but eroded away, leaving Secured Creditors in a worse condition and at grave risk of not being adequately protected, and the case being almost a year old with no Plan on file and not one cent paid to creditors. A hearing was scheduled for December 4, 2020.

9. On December 4, 2020, a hearing was held on the second Relief From Stay motion, and the court ordered the Debtor to make adequate protection payments each month pending confirmation of a Plan. The payment to be made was the *non-default rate payment* in the Note (even though the loan remained in default and the Note calls for higher default payments), due

4

on the 1st of each month, late after the 10th, and if the payment is not made by the 10th of the month, then Secured Creditors can ask the Stay to be terminated by setting a hearing on 14 days' notice. An Order was entered by the Court on December 7, 2020.

10. Since entry of the Order on December 7, 2020, Debtor, through its principal, Mr. Pierce has made 4 payments to date, January 2021 through April 2021, and each one has been late. In some instances paid after the 10th of the month. And in two instances was sent to Secured Creditors' attorney, payable to Secured Creditors and one to Secured Creditors' counsel, despite prior instructions to the contrary to send all payments to the loan servicing agent as shown in the Proof of Claim on file in this case. As of this date, May 4, 2021, the May payment has not been paid.

11. On January 25, 2021, Debtor filed a Status Conference Statement, and again, despite three prior failures to timely abide by Court Orders, without any cause, states that Debtor is "imminently finalizing its plan.", once again not having complied with the Court's 4th Order to file a Plan and Disclosure Statement and making an innocuous statement like "imminently finalizing its plan" (what does that even mean?), and obviously sought to just buy even more time than was previously given to do so, and again, letting a deadline expire without asking for an extension before expiration and filing a statement after the fact. Debtor promised to file missing operating reports in that statement, which to date has never been done. There are currently still missing reports.

12. On February 11, 2021, Secured Creditors herein restored its Relief From Stay motion to the calendar, because Debtor's counsel advised the payment for February was late, but was going to be paid by the 17th, and Secured Creditors had little to no faith the payment would be made, either by the 17th or any other date, and this was just the second payment due under the December 7 Order. Debtor has a substantial history of not complying with Orders of this Court.

5

A hearing was set for February 25, 2021, the same time as a hearing to approve a Disclosure Statement as expected by the Court.

13. On February 23, 2021, Debtor filed a Status Conference Statement and this time apologizes for further delay as the owner of the Debtor (Richard Pierce) was out of contact for several weeks and unable to sign the Plan. This was just unreasonable under the circumstances and all of the time that has passed, for the Debtor's principal to stop communicating with its counsel to get something done that has been an issue for quite a while preceding this statement. Especially with the "imminent" finalization of the Plan a month prior, it should have already been done, signed and filed timely. The Debtor also asks the Court to excuse the tardiness of the late payment to Secured Creditors, with no facts, evidence or excuse justifying why it was late in the first place, or reassurances it will be timely going forward. Debtor asks for "just one more" continuance.

14. On February 24, 2021, for the first time in this case, more than a year since the case was filed, the Debtor filed its first and original Plan and Disclosure Statement. A hearing was scheduled for March 18, 2021.

15. On February 25, 2021, because the Plan and Disclosure Statement were not timely filed and Debtor was not ready to proceed with approval (again), the Court continued the matters over to March 18, 2021.

16. On March 18, 2021, after discussing the issues and problems with the original Plan, and Debtor stating it would file an Amended Plan, the Court continued the matters to April 29, 2021 and the Debtor was *Ordered by the Court* to file an amended Disclosure Statement and Combined Plan, and to get current on Monthly Operating Reports by April 14, 2021. Once again Debtor failed to timely comply with the Orders of the Court. An Amended Disclosure and Statement and Plan was not filed by April 14, 2021 and Debtor still is not current on Monthly

Case: 20-50182    Doc# 98    Filed: 05/04/21    Entered: 05/04/21 22:40:37    Page 6 of 12

1   Operating Reports.

2       17. On April 22, 2021, Debtor filed a Status Conference Statement, indicating why a
3   Plan and MORs were not timely filed (again) – that the Debtor corporation went "suspended"
4   and Debtor's counsel's apparent illness and hospitalization. The corporate status of the Debtor
5   is something that is the Debtor and Mr. Pierce's responsibility to maintain. No reason is given
6   for the suspension but typically something like that occurs when taxes or fees have not been
7   paid. But whatever it is, it is more likely than not that it was some failure on Pierce's part
8   within his sole discretion and control which caused the suspension, and now is causing yet
9   another delay in a long line of delays with this Debtor and this case. As to counsel's illness and
10  inability to work during some of this time, it is the sincere hope of the Secured Creditors and
11  their counsel that he is well and will endure a speedy recovery. Although it is not specified in
12  the statement which counsel fell ill, whether it was Mr. Mlarnik or Mr. Winters, both of who
13  have appeared in this case, and either of which could likely have picked up the slack for the
14  other. This is an unfortunate event with very unfortunate timing, and very little and vague
15  information supplied regarding the same, with the end result contributing  yet another delay, and
16  a continuance, albeit only for a little more than week. All of this only increases Secured
17  Creditors' fears and frustrations in this matter. They are owed nearly 2 million and have
18  watched the equity in the real property disappear along with any protection they had, and
19  increasing the chances they might suffer a substantial loss, all while the Debtor continues with
20  more delays. The status report also incorrectly states that all Motions for Relief From Stay have
21  been resolved, which is untrue. The second Relief From Stay motion by Secured Creditors
22  remains pending, due to constant default and pending further consideration of the Court,
23  including consideration of the Disclosure Statement and Plan in addition to factors such as lack
24  of equity, lack of insurance, and lack of payment of property taxes. Based on this Status Report,

7

however, the Court on its own, has rescheduled the matters in this case to May 11, 2021, again, allowing Debtor and Pierce yet another pass for failing to comply with Court Orders without any consequence or sanction, and without substantial cause and scant excuses (counsel's illness notwithstanding).

## **SPURIOUS PLAN FUNDING**

18. All during the process of the preceding few months, Debtor, Pierce and counsel have made multiple representations to creditors and to the Court, that the Plan will be funded by the personal injury proceeds to be received by Richard Pierce, the Debtor's principal. At one point, Debtor was asked to provide proof of this settlement and proof of when these proceeds were to be available. Debtor did provide some evidence including a declaration from the personal injury attorney. But Debtor also advised that there were confidentiality provisions in the settlement and this Court, creditors, counsel and other parties were not to know the amount of the settlement. Documents presented were redacted as to the dollar amounts. So all Debtor has been able to do is to reassure everyone there is money coming "in a couple weeks", "in a couple more weeks" and it will be enough to fund the Plan. But is this sufficient and is this sufficient to comply with the Code in approving a Disclosure Statement and Confirming a Plan? Objecting Secured Creditors take the position it is NOT sufficient. The Court, creditors, and U.S. Trustee have a right to know precisely how a Plan is going to be funded, the source, and the amount, in order to properly assess whether or not the Plan is feasible or reasonable. By not disclosing the amount, no one has any idea how much Richard Pierce is getting, how much he is keeping for his personal or business use, and how much is being pledged to this Plan, or even if he has sufficient funds to pay into the Plan. No funds have apparently been deposited into the Debtor's accounts according to the information filed with the Court. So far the Debtor and Mr. Pierce have strung everyone along for more than a year and a third, mostly without making any

8

1 | payments. Who's to say he is not *hiding the ball* for his own benefit at the expense of his
2 | creditors? While it is not totally inconceivable that a wrongful death case might have a
3 | confidentiality clause, that should not be the problem of the Debtor, its creditors, or the Court.
4 | A Debtor is required to make full and transparent disclosures in order to exhibit good faith
5 | in the presentation of a Plan. By not doing so here, the Debtor is acting in bad faith, clearly.
6 | Mr. Pierce and the Debtor offer no solution of how to get around the problem either. He has just
7 | thrown up his hands, and expect us to trust him. Secured Creditors are not willing to do so
8 | under these circumstances, especially considering the grave position Secured Creditors currently
9 | are in with respect to the lack of equity and adequate protection in the real property which is the
10 | collateral for Secured Creditors' loan. In addition, the personal injury claim and any proceeds
11 | thereof belong to Richard Pierce, not the Debtor. The Court has no technical jurisdiction over
12 | that claim or the money. Pierce can receive the money and do with it what he pleases. But if
13 | the Debtor is depending on that money to fund its Plan, and Pierce wants to pledge that money
14 | to fund the Plan, he needs to make more a disclosure, and at minimum deposit money into the
15 | accounts of the Debtor to secure the funding for the Plan, something that apparently has not
16 | been done to date. Bottom line is that Debtor and Pierce have not done enough and have not
17 | shown enough good faith to meet the standards required by the Code to confirm a Plan here and
18 | to meet their burden with respect to the funding of this particular Plan.

19 | **THE PLAN COMPLETELY IGNORES BACK TAXES ON THE REAL PROPERTY**

20 | 19. Property Taxes on the Lantz property have not been paid for a period of time, pre-
21 | petition and post-petition. Currently delinquent property taxes owed are <u>$59,101.49</u>, per <u>Exhibit</u>
22 | <u>"A"</u>, attached hereto. Nowhere in the Plan are these taxes addressed. The existence of this
23 | delinquency also affects the equity in the property. This was raised in the Relief From Stay
24 | motion which remains pending before the Court so Debtor and its counsel were aware of the

9

delinquency when the current Disclosure Statement and Plan were prepared. The delinquency is much higher now than indicated in the motion.

## THE REAL PROPERTY IS NOT INSURED

20. The Debtor has failed to maintain insurance per the Note and Deed of Trust. See Exhibit "B" attached hereto.

## LACK OF EQUITY IN THE REAL PROPERTY

21. The Lantz property has no equity, it is over-encumbered by more than 1 million dollars:

| | |
|---|---|
| $1,750,000.00 | Value (as admitted in the Plan) |
| $1,927,140.00 | 1st Trust Deed (Objecting Secured Creditors) – Exhibit "C" |
| $    59,101.00 | Property Taxes        (Exhibit "A") |
| $ 510,096.00 | 2nd Trust Deed (Joyce) |
| $ 332,617.00 | 3rd Trust Deed (Joyce) |

**<   $1,078,954.00 >  Negative Equity**

## LACK OF EQUITY CUSHION AS TO OBJECTING SECURED CREDITORS

22. Even with ignoring all liens junior to Objecting Unsecured Creditors, the property is still over-encumbered by at least $177,140.00:

| | |
|---|---|
| $1,750,000.00 | Value (as admitted in the Plan) |
| $1,927,140.00 | 1st Trust Deed (Objecting Secured Creditors) – Exhibit "C" |

**<   $ 177,140.00 >   Negative Equity Cushion  \*\***

(** The original schedules filed by Debtor in this case indicated the value of the property was $2,000,000.00. Debtor has since lowered the value to $1,750,000.00 in the most recent Disclosure Statement and Plan filed in this case. Even at the higher value of $2,000,000.00, the equity is still only $72,860.00 which is still less than 3%, and insufficient to protect the interests of the lenders. If the property was sold, that amount is easily consumed by costs of sale which would likely exceed this amount.)

## **LOAN MATURES JUNE 1, 2021, PLAN FAILS TO PROPERLY PAY CLAIM**

23. The loan which secures the interests of the First Trust Deed matures on June 1, 2021, and shall be all due and payable at that time. The Plan fails to mention or address this event. This is something that appears on the face of the Note and is known to Debtor and counsel. The Plan also ignores the substantial post-petition default. The Plan seeks to "reinstate" the loan by making regular non-default payments, and extra toward arrears over 24 months. However, the figures as proposed in the Plan are not correct and under the calculations in the Plan, the payments would not reinstate the loan at the end of 24 months even if the maturity date was past that 24-month period, since the Plan only contemplates payment of pre-petition arrears and not the post-petition arrears:

Pre-Petition Arrears:  $ 156,083.43          Per Proof of Claim on file

Post-Petition Arrears  $ 321,750.25

Total Arrears          $ 477,833.68          Per Exhibit "C"

## **CONCLUSION**

This case has languished far too long with no timely progress, and the current Plan should not be confirmed (and the Disclosure Statement not approved), This Debtor has consistently failed to follow Court Orders and comply with requirements under the Code. The Debtor has acted in bad faith by not disclosing the amounts or potential sources of funding of the Plan, allowing the corporation to be suspended and causing further delays, not paying real property taxes, and not providing real property insurance as required. Further, and most importantly and substantially, there is no equity in the real property and no equity cushion to protect the Objecting Secured Creditors' interest with respect to the First Trust Deed against the real property. The adequate protection payments under the December 7, 2020 Order are not sufficient to create or maintain an adequate equity cushion either. Those payments bought the Debtor a little bit of time, nearly 5 months (December 2020 to May 2021) to get a

11

*Confirmable* Plan in order and make substantial progress to either reinstate or pay off the First Trust Deed. Debtor has been struggling to keep up with the Adequate Protection payments. Every payment has been late and the May payment is now currently due and late. It is apparent the Debtor cannot, or will not be able to get a confirmable Plan before the Court in a prompt manner as previously directed by the Court. Continuing to make the regular non-default payments under the Note do not protect the holder of the First Trust Deed. The lack of equity and lack of equity cushion as to the First Trust Deed puts the holder at a substantial risk, whether the non-default Note payments are made or not. This Plan does not provide for any protection to the holder of the First Trust Deed either. It proposes to make small, non-default monthly payments while paying only a portion of the arrears, does not address the maturity event coming up on the Note on June 1, 2021 (less than a month away), and does not propose to pay the arrears, or the entire loan in full. The real property is not necessary for an effective reorganization of this Debtor.

WHEREFORE, Objecting Unsecured Creditors request that approval of the Disclosure Statement be denied, the case dismissed, and/or that the Automatic Stay be terminated forthwith including a waiver of the 14-day Stay pursuant to FRBP, Rule 4001(a)(3), and for such other and further relief as the Court deems and proper.

LAW OFFICES OF EDWARD T. WEBER

Dated: May 4, 2021                    By: _____

**Edward T. Weber, Esq.**
**Attorneys for Objecting Secured Creditors**
SASSAN RAISSI, A SOLE INDIVIDUAL, AS TO AN UNDIVIDED 600,000/1,429,000 INTEREST; JERRY KIACHIAN, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY, AS TO AN UNDIVIDED 629,500/1,429,000 INTEREST; MOHSEN KEYASHIAN, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY, AS TO AN UNDIVIDED 200,000/1,429,000 INTEREST

12